IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

E.S. WAGNER CO.,                         CASE NO. 3:19 CV 1759

       Plaintiff,

       v.                                            JUDGE JAMES R. KNEPP II

PLANT PROCESS EQUIPMENT INC., et al.,
                                                            MEMORANDUM OPINION
       Defendants.                               AND ORDER

## INTRODUCTION

On August 2, 2019, E.S. Wagner Company ("ESW") brought this action asserting two claims of breach of contract (Counts One and Two) and a single count of unjust enrichment (Count Three) against Defendant Plant Process Equipment, Incorporated ("PPE"). (Doc. 1). Against Defendant Alpont, LLC ("Alpont"), ESW asserts a single breach of contract claim (Count Two) and an unjust enrichment claim (Count Three). *Id*. The Court has jurisdiction pursuant to 28 U.S.C. § 1332. Currently pending before the Court is Alpont's Motion for Summary Judgment (Doc. 31), to which ESW responded (Doc. 42), and Alpont replied (Doc. 49).

For the following reasons, Alpont's Motion for Summary Judgment is granted as to Count Two and denied as to Count Three.

## BACKGROUND

Viewing the facts in the light most favorable to Plaintiff, the background of this case is as follows:

This dispute arose from the construction of a manufacturing facility in Oregon, Ohio owned by Alpont. (Doc. 1, at ¶8). In September 2015, Alpont contracted with PPE for the design and

building of a sodium methylate plant. (Razzano Depo., Doc. 45, at 16). In December 2015, PPE and Alpont entered into a second agreement to add a methanol plant to the project. *Id*. at 16-18. Alpont expected PPE, as the general contractor, to design and build the plants for a set price as a turnkey project. *Id*. at 26.

In August 2017, ESW entered into a Master Services Agreement ("MSA") with PPE to provide site development, earth work, and civil and foundation construction. (Doc. 1, at ¶9). By this time, the total cost of the project was significantly higher than originally agreed between Alpont and PPE for several reasons, including relocating the plant from Pennsylvania to Ohio, changes in scope of work, and changes in materials costs resulting from delays. *See* Borg Depo., Doc. 46, at 40-41; BuPane Depo., Doc. 47, at 26; Razzano Depo. at 30-31. To cover these additional costs Alpont agreed to change orders issued by PPE. (Borg Depo. at 30-31; Adams Depo., Doc. 48, at 30-32).

ESW proceeded with its work on the plant site and was paid directly by PPE for its first nine payment applications. (Doc. 1, at ¶11). However, as the project progressed PPE ran out of money and stopped paying suppliers and subcontractors, including ESW. (Borg Depo. at 67-68; BuPane Depo. at 21-22). ESW informed PPE and Alpont it could not continue work unless full payment was made. (Razzano Depo. at 49-50; Borg Depo. at 74-75). To keep the project moving and workers on site, Alpont began paying on subcontracts directly. (Razzano Depo. at 32; BuPane Depo. at 28, 31, 40-41; Adams Depo. at 56, 70-72). Over the next few months, Alpont paid ESW for three consecutive payment applications. (Razzano Depo. at 49-56; BuPane Depo. at 44-48). ESW continued to work on the project. (Borg Depo. at 78-79; Adams Depo. at 72).

Around December 13, 2018, ESW submitted a payment application covering most of the final work on the job, apart from some change orders and minor work to be completed in the spring

(Moser Affidavit, Doc. 43, at ¶3); both PPE and Alpont refused payment (Razzano Depo. at 57-58; BuPane Depo. at 48-49). The total balance owed to ESW at the time of this last payment application was $586,122.50. (Moser Affidavit, Doc. 43, at ¶3). Thereafter, ESW submitted change orders, for work already approved by PPE and completed by ESW, for an additional $286,481.41. *Id*. at ¶¶5-7. To date, ESW remains unpaid. (Doc. 1, at ¶15).

## STANDARD OF REVIEW

Summary judgment is appropriate where there is "no genuine issue as to any material fact" and "the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). When considering a motion for summary judgment, the Court must draw all inferences from the record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The court is not permitted to weigh the evidence or determine the truth of any matter in dispute; rather, the court determines only whether the case contains sufficient evidence from which a jury could reasonably find for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).

The moving party bears the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). This burden "may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id*. Thereafter, the nonmoving party has an affirmative duty to direct the court's attention to those specific portions of the record upon which create a genuine issue of material fact. *See* Fed. R. Civ. P. 56(c)(3) (noting that the court "need consider only the cited materials"); *see also Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989) (a court "no longer has a duty to search the entire record to establish that it is bereft of a genuine issue of material fact."). "Instead, when the non-movant has failed to point out a question of fact on an issue, a district court's 'reliance on the facts

advanced by the movant is proper and sufficient.'" *Wardle v. Lexington-Fayette Urban Cty. Gov't*, 45 F. App'x 505, 509 (6th Cir. 2002) (quoting *Guarino v. Brookfield Twp. Trs.*, 980 F.2d 399, 404 (6th Cir. 1992)).

## DISCUSSION

Alpont moved for summary judgment on ESW's breach of contract (Count Two) and unjust enrichment (Count Three) claims. (Doc. 31). For the following reasons, the Court grants the motion as to Count Two and denies the motion as to Count Three.

Breach of Contract

ESW's breach of contract claim is an action on an account; this is "appropriate where the parties have conducted a series of transactions for which a balance remains to be paid." *Taylor Steel, Inc. v. Keeton*, 417 F.3d 598, 604 (6th Cir. 2005). To succeed in an action on an account ESW must establish the existence of a contract with Alpont. *Id*. But ESW fails to show either an express or implied contract between it and Alpont, nor does it raise a genuine issue of material fact as to the contract's existence.

"The general rule is that, absent an agreement otherwise, there is no privity of contract between a property owner and subcontractor." *G.R. Osterland Co. v. Cleveland*, 748 N.E.2d 576, 578 (Ohio Ct. App. 2000). The only written agreement to which ESW draws the Court's attention is the MSA. Yet, Alpont is never mentioned in the MSA. (Doc. 45-1, at 1-6). All the obligations of the MSA exist solely between PPE and ESW. *Id*. There is no provision identifying or setting out the rights of a third-party beneficiary. *Id*. And the only hint that the MSA involves another interested party is found in the preliminary recitations, which identifies PPE as the representative of an unnamed property owner via a separate contract. *Id*. at 1.

ESW raises a vague argument that PPE's status, as Alpont's representative for the project, somehow imputes liability to Alpont under the MSA. (Doc. 42, at 6). But, ESW fails to outline the legal theory underpinning this argument, much less identify facts in the record to support the same. The Court will not attempt to conjure up a legal basis to impose liability where the non-moving party fails to do so. *See Street*, 886 F.2d at 1479. Therefore, the Court finds that Alpont is not a party to the MSA.

While Alpont is not a party to the MSA, an action on an account does not require a written contract; an oral or implied in fact contract may suffice to establish privity. *See Cooper & Pachell v. Haslage*, 756 N.E.2d 1248, 1250 (Ohio Ct. App. 2001); *Booher Carpet Sales, Inc. v. Erickson*, 1998 WL 577159 (Ohio Ct. App). Yet, ESW does not argue or present any evidence to support these alternative contract theories. ESW makes a conclusory reference to a "new agreement" but fails to offer any evidence in support of its creation, except that ESW was paid directly by Alpont. (Doc. 42, at 6). There is no evidence of when or between whom this alleged "new agreement" was created, or what the terms of this "new agreement" are. Further, ESW does not present evidence Alpont ever made it a promise or assurance. *See Coyne v. Hodge Const., Inc*., 2004-Ohio-727, ¶10 (Ohio Ct. App.) (affirming a vague verbal representation by an owner was insufficient to create an oral contract subsuming the terms of subcontractor's written agreement with general contractor). Indeed, Lou Razzano, Alpont's representative, repeatedly confirmed only PPE and ESW had a contractual relationship. *See* Doc. 49, at 3; Razzano Depo. at 49, 87, 106-07.

Even when viewing the evidence in a light most favorable to ESW, the Court finds ESW has not raised a genuine issue of material fact as to the existence of a contract. *See Wardle*, 45 F. App'x at 509 (where the "non-movant has failed to point out a question of fact on an issue, a district court's reliance on the facts advanced by the movant is proper and sufficient."). As ESW

5

does not have a contract with Alpont it lacks privity to assert a breach of contract claim. *Sobh v. Am. Family Ins. Co.*, 755 F. Supp. 2d 852, 855 (N.D. Ohio 2010). Therefore, Alpont's Motion for Summary Judgment is granted as to Count Two.

Unjust Enrichment

Alpont also seeks summary judgment on ESW's claim of unjust enrichment. Unjust enrichment "occurs when a party retains money or benefits which in justice and equity belong to another." *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 684 F. Supp. 2d 942, 951 (N.D. Ohio 2009). Recovery for unjust enrichment is mutually exclusive from recovery under a contract theory. *See Res. Title Agency, Inc. v. Morreale Real Estate Servs., Inc.*, 314 F. Supp. 2d 763, 772–73 (N.D. Ohio 2004). To prove a claim of unjust enrichment, ESW must show (1) a benefit conferred by ESW upon Alpont; (2) knowledge by Alpont of the benefit; and (3) retention of the benefit by Alpont under circumstances where it would be unjust to do so without payment. *Reisenfeld & Co. v. Network Grp., Inc.*, 277 F.3d 856, 860 (6th Cir. 2002).

In the construction context, Ohio law requires that "[b]efore a subcontractor can pursue an unjust enrichment claim against a property owner, it must establish that the general contractor is 'unavailable for judgment and unable to pursue the owner for the money the subcontractor is seeking." *AP Alternatives, LLC v. Rosendin Elec., Inc.*, 2020 WL 2526957, at *9 (N.D. Ohio) (internal citations omitted). This prevents the subcontractor from making a double recovery or requiring the property owner to pay twice for the same performance. *Booher*, 1998 WL 677159, at *7. ESW cites the testimony of PPE's comptroller, Matthew BuPane, to support its claim that PPE is not available for judgment. (Doc. 42, at 7; BuPane Depo. at 93-94). However, this testimony only establishes that PPE still has outstanding payment obligations to ESW and other subcontractors, not that PPE is unavailable. Mr. BuPane also testified that PPE is not in bankruptcy

6

and is still attempting to negotiate payment on its outstanding obligations. (BuPane Depo. at 21, 94). Moreover, PPE remains an active party to this litigation. *See Coyne*, 2004-Ohio-727, at ¶5 (affirming that a general contractor who has not filed for bankruptcy and remains a party to litigation is available for judgment).

Normally, this failure to exhaust its remedies against PPE would doom ESW's claim for unjust enrichment against Alpont. However, there is evidence which clouds the issue. Two PPE representatives testified some of the work which ESW completed may have been outside of the scope of the agreements undertaken by PPE. (Adams Depo. at 64-65, 81-82, 108-10; Borg Depo. at 57-67). Further, Mr. Razzano testified he approved some change orders for ESW directly. (Razzano Depo. at 94-99). If the work completed by ESW was done at Alpont's direction and or outside the scope of the contracts, PPE's availability is irrelevant, as the obligation to pay may flow directly between Alpont and ESW. In this scenario, there is no longer a risk of double recovery or payment if the obligation incurred was independent of PPE and its contracts.

Since it is unclear whether the work ESW completed was included within the various agreements between the parties, it is also unclear if Alpont has fully paid for the work. Typically, "[w]here a property owner has paid the general contractor for the materials and labor in issue, the property owner has sustained no gain and, therefore, has not been unjustly enriched." *Graves Lumber Co. v. Croft*, 20 N.E.3d 412, 428 (Ohio Ct. App. 2014). In support of this argument, Alpont cites the fact ESW has received approximately $9.4 million (in combination from PPE and Alpont), on a contract that was originally worth $9.3 million and Alpont has paid over $30 million more on this project than the originally agreed upon price with PPE. (Doc. 31, at 4-5).

For a few reasons, these total payments by Alpont are not determinative as to this issue. First, ESW submits its total billings for the project amount to $9.6 million. (Doc. 42, at 8; Moser

7

Affidavit, Doc. 43, at ¶7). This difference could be the result of the change orders testified to by Mr. Razzano or the out of scope work testified to by PPE representatives. Second, ESW argues the total payments cited by Alpont include the work of other subcontractors on this project, not just ESW. (Doc. 43, at 8). Third, there is an open question as to whether Alpont paid PPE for the specific work upon which ESW is claiming unjust enrichment. *Reisenfeld*, 277 F.3d at 861 ("when the subcontractor is not paid by the contractor and the owner has not paid the contractor for the aspect of the job at issue, the subcontractor can look to the owner for payment under a theory of unjust enrichment."). The record shows Alpont stopped paying PPE prior to the completion of this project (Razzano Depo. at 35, 42; BuPane Depo. at 92), but ESW continued to perform work (Adams Depo. at 135).

At this juncture, the Court is unclear about the parties' contractual relationships, including the effect and extent of alleged change orders. It also lacks clarity on whether any work undertaken was out of scope and if so, which party would be responsible for the payment of same. Without more insight into whether the work completed was contemplated by the parties' contracts, a genuine issue of material fact exists regarding whether Alpont has fully paid for the work at issue. *See Meridien Mktg. Grp., Inc. v. J & E Bldg. Grp., Inc.*, 2011-Ohio-4872, ¶34 (Ohio Ct. App.) (recognizing that while "ordinarily, it is just to limit an owner's liability to the amount [owed] under the contract [ ] this is not just in all situations.").

Additional issues of material fact also prevent summary judgment. When a "subcontractor was led to believe that anyone other than the general contractor would provide compensation", *William H. Kelly Co. v. First Fed. Sav. & Loan*, 1989 WL 32577, at *7 (Ohio Ct. App.), the party inducing the subcontractor to act can be liable under an unjust enrichment theory. Here, to avoid delays, Alpont paid ESW directly on three separate occasions. (Doc. 42, at 4; BuPane Depo. at 45-

48; Razzano Depo. at 42, 51-56). These direct payments were made with the explicit purpose of preventing ESW from walking off the project due to lack of payment by PPE. (Razzano Depo. at 32, 50, 94; Borg Depo. at 74-75; Adams Depo. at 112). This evidence is sufficient to create a genuine issue of material fact as to whether Alpont's actions induced ESW to act to its detriment, thus resulting in unjust enrichment to Alpont. *See Advantage Renovations, Inc. v. Maui Sands Resort, Co.*, 2012-Ohio-1866, ¶34 (Ohio Ct. App.) (a genuine issue of material fact exists as to unjust enrichment claim where "there is evidence that the owner misled the subcontractor to the subcontractor's detriment or when the owner induced a change in the subcontractor's position to the subcontractor's detriment.").

In sum, genuine issues of material fact, such as the scope of the work, payment for specific work, and whether ESW was induced to act against its interest by Alpont, exist which prevent a finding of summary judgment as to this issue. As a result, the Court denies Alpont's Motion for Summary Judgment on Count Three.

## CONCLUSION

For the foregoing reasons, good cause appearing, it is

ORDERED that Defendant Alpont's Motion for Summary Judgment (Doc. 31) be, and the same hereby is, GRANTED, as to Count Two; and DENIED, as to Count Three.

 s/ *James R. Knepp II*
UNITED STATES DISTRICT JUDGE

9